FILED'06 APR 06 10:45USDC·ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEREMY RYAN LEHMAN,

              Petitioner,

    v.

BRIAN BELLEQUE,

              Respondent.

CV 03-1711-MA

OPINION AND ORDER

C. RENEE MANES
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204

      Attorney for Petitioner

HARDY MEYERS
Attorney General
YOULEE YIM YOU
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301-6313

      Attorneys for Respondent

MARSH, Judge:

Petitioner, an inmate in the custody of the Oregon Department of Corrections, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's habeas corpus petition (#3) is denied.

## FACTUAL BACKGROUND

Following a jury trial, petitioner was convicted on July 9, 1997 of Aggravated Murder (Felony Murder), Intentional Murder, Burglary in the First Degree, Robbery in the First Degree, and Conspiracy to Commit Possession of a Controlled Substance. Resp. Ex. 101. He was sentenced to concurrent sentences of 360 months for Aggravated Murder, 180 months for Murder, and 56 months for Robbery, and 34 months for Burglary. Id.

Petitioner's victim was Michael Mang. At petitioner's trial evidence showed that in late June 1994 petitioner and three other young men conspired to steal marijuana from Mang, who they knew to be a marijuana grower. Petitioner snuck up to Mang's back door and went into the house, while Petitioner's co-conspirators waited outside. Petitioner's co-conspirators testified that they heard banging, and they heard petitioner shout "Take that mother fucker!" One of the co-conspirators looked into the house and saw petitioner facing the couch, swinging something over his head. He testified that petitioner looked at him and said, "I

think I killed him." Mang's body lay on the couch, his face bashed to the point of being unrecognizable. Petitioner was "dripping with blood" and holding a small shovel. The co-conspirator asked, "What happened?" and petitioner replied, "I killed him[.] [H]e's dead."

Petitioner took marijuana from the house. Outside, he admitted to another co-conspirator, "I did it. I killed him." Petitioner and the other men returned to the party. People at the party asked petitioner why he had blood all over him and he told them he had hit a man in the face with a shovel, that his "brains were smashed against the wall," and that he thought the man was dead.

The jury initially returned a verdict finding petitioner guilty of Conspiracy to Commit Possession of a Controlled Substance, Burglary in the First Degree, Robbery in the First Degree, Aggravated Murder (Felony Murder) and Aggravated Murder (Conceal Identity), but not guilty of Intentional Murder. Petitioner asked the court to poll the jurors and the court confirmed that the verdict accurately represented the jurors' verdicts. Petitioner then asked the court to receive the first four verdicts, but to instruct the jury to retire and return a not guilty verdict on the two aggravated murder counts. He argued that the not guilty verdict on Intentional Murder

necessarily disposed of the Aggravated Murder charges because the intent element was also part of the Aggravated Murder elements.

The state asserted that the court was not authorized to direct the jury to return a specific verdict and Oregon law did not prevent the receipt and entry of inconsistent verdicts. However, the state contended that under ORS 136.480 the court could resubmit the case to the jury. ORS 136.480 provides in pertinent part:

> When a verdict is found in which it appears to the court that the jury has mistaken the law, the court may explain the reason for that opinion and direct the jury to reconsider its verdict; but if after such reconsideration the jury finds the same verdict, it must be received.

Petitioner then argued that inconsistent verdicts did not necessarily indicate that the jury had mistaken the law. He again urged the court to accept the first four verdicts, but then suggested that the court should enter all six verdicts and that he would "deal with those consequences...".

The trial court reconvened the jury and asked them to reconsider their verdict if they "deem[ed] it appropriate." The judge stated:

> Members of the jury, as it turns out I have more work for you to do, I'm sorry. It is my conclusion after considering the law and the verdicts as they are returned that you have made a mistake or possibly have made a mistake as to the law and so I am going to read you the elements of the three different murder charges involved and the definition that fits all three and then I'll ask you to reconsider and I want to make it clear to you that when I ask you to

> reconsider, it is your decision what to do.  It's not for me
> to tell you what to do, but simply to provide you the
> opportunity if you deem it appropriate.

The court then re-instructed the jury regarding the murder

charges and the definition of intent, noting that the definition

"fits all three offenses where that word appears."  The jury

retired and petitioner renewed his objection and added an

objection that resubmission of the verdict violated the double

jeopardy clauses of the federal and state constitutions.

     During redeliberations the jury sent a note to the court

stating:

> We have concern regarding the meaning of "intention" to
> commit murder on the first murder charge.  We felt the
> meaning was perhaps a variation of "premeditation[.]"
> [W]ere we correct?  Please send a clarification.

The court responded by giving the jury a copy of the uniform

instruction on intent.

     Deliberations continued the next morning.  The jury sent

another note indicating it was hung on one of the charges.  The

court asked the jury to continue deliberating after lunch.  Later

that day the jury reached its final verdict, finding petitioner

guilty of Intentional Murder and Aggravated Murder (Felony

Murder), but not guilty of Aggravated Murder (Conceal Identity).

A poll of the jurors supported this verdict.

## PROCEDURAL BACKGROUND

On direct appeal, the Oregon Court of Appeals affirmed without opinion, State v. Lehman, 164 Or. App. 537 (1999), and the Oregon Supreme Court denied review, 331 Or. 283 (2000). Resp. Exs. 103-107.

Petitioner filed for post-conviction relief (PCR) in Marion County Court Case No. 01C19960, but the court denied relief. Resp. Exs. 113-115. Pursuant to State v. Balfour[1], 311 Or. 434, 451 (1991), petitioner's attorney filed an appeal with the Oregon Court of Appeals, but petitioner did not submit "Section B" briefing in support of his appeal. Resp. Ex. 116. The Court of Appeals affirmed the post-conviction court's decision without opinion, and the Oregon Supreme Court denied review. Resp. Exs. 117-119.

On December 10, 2003, petitioner filed for habeas corpus relief with this court, and on June 23, 2004, he moved to have his petition voluntarily dismissed and refiled. Docs. # 3, 11. Petitioner alleges only one ground for relief, as follows:

Ground One: Ineffective assistance of counsel and judicial misconduct, double jeopardy[.]

_____

[1] If a petitioner seeks to raise claims that counsel considers to be frivolous, a Balfour brief may be submitted, containing a "Section A" statement of the case and facts, signed by counsel, and a "Section B," raising requested claims of error, signed only by petitioner.

Supporting Facts: The jury initially found defendant not
guilty of intentional murder and guilty of two counts of
aggravated murder.  One of the aggravated murder charges
alleged that the murder was committed intentionally while
defendant was committing the crime of Burglary in the First
Degree.  The other aggravated murder charge alleged that
defendant committed the murder intentionally in an effort to
conceal the identity of the perpetrator of another crime.
The trial court, over defendant's objections, ordered the
jury to redeliberate on all three murder charges, because
the court found that the verdicts were inconsistent and the
court believed that the jury had mistaken the law.

After re-deliberations, the jury returned verdicts of guilty
of intentional murder and of aggravated murder committed
intentionally while defendant was committing the crime of
Burglary in the First Degree, but the jury acquitted the
defendant of the aggravated murder charge alleging that
defendant committed the murder intentionally in an effort to
conceal the identity of the perpetrator of another crime.
The trial court improperly refused to receive the initial
verdicts.  There was no basis to order the jury to
deliberate further on the charge of murder.  The court
should have received the not guilty verdict on that charge.
There was no evidence that the jury was mistaken as to the
law on that charge.  Further, re-deliberation on that charge
violated defendants right against double jeopardy under the
State and Federal Constitutions.  If the initial verdicts
had been received, the issue of inconsistent verdicts would
have been presented to the trial court.  This court should
treat this case as though the inconsistent verdict issue is
presented, because the court should have received the
initial verdicts.  This court should then rule that
inconsistent verdicts cannot be received and remand this
case for a new trial on the single charge of aggravated
murder committed intentionally while defendant was
committing the crime of Burglary in the First Degree.
Additionally, petitioner feels that the second verdict was
less favorable and that his trial attorney could have done a
better job representing his interests in this matter.  The
only significant motion made in this case was the trial
attorney motion for reconsideration of the verdict at the
time of sentencing.  (Said motion being denied).

Doc. # 3.

Respondent moves this court to deny relief on the basis that petitioner's ineffective assistance claim is vague and conclusory, procedurally barred, and lacks merit. For the reasons that follow, this habeas corpus petition is denied.

### DISCUSSION

### I.   Procedural Default

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. <u>See</u> 28 U.S.C. § 2254(b)(1). A petitioner must seek discretionary review in the state's highest court in order to fully exhaust his state remedies. <u>O'Sullivan v. Boerekel</u>, 526 U.S. 838 (1999).

To satisfy the exhaustion requirement, a prisoner must fairly present his federal claims to the state courts. <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>Casey v. Moore</u>, 386 F.3d 896, 911 (9th Cir. 2004). A fair presentation requires a prisoner to state the facts that entitle him to relief, and to reference the federal source of law on which he relies, or a case analyzing the federal constitutional guarantee on which he relies, or to simply label his claim "federal." <u>Baldwin</u>, 541 U.S. at 32; <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996). It is not enough that all the facts necessary to support the federal claim were

available to the state courts, or that somewhat similar claims were made. Anderson v. Harless, 459 U.S. 4, 6, (1982).

Petitioners must have also presented their federal claims to the state courts in a procedural context in which the merits of the claim will be considered. Castille v. Peoples, 489 U.S. 346, 351-52 (1989)(claim not fairly presented when raised for the first time on petition for review to state Supreme Court).

As respondent correctly points out, petitioner failed to assert his claim of ineffective assistance of counsel on post-conviction appeal to the Oregon Court of Appeals and the Oregon Supreme Court. Counsel prepared and submitted to the Oregon Court of Appeals "Section A" of a Balfour brief, explaining that he had not identified any arguably meritorious issues on appeal. In that brief counsel stated that he supplied petitioner with copies of the trial record and a reasonable opportunity to "raise any issue" in "Section B," but petitioner did not do so. Resp. Ex. 116 at 3. Counsel submitted a similar brief to the Oregon Supreme Court. Resp. Ex. 117.

Petitioner argues this court should not find his ineffective assistance claim defaulted because "neither the Oregon Court of Appeals nor the Oregon Supreme Court imposed any procedural bar when ruling on [his] claims, nor contended that he did not adequately raise his claims." In support of this argument,

petitioner points to the Court of Appeals' decision affirming without opinion (Resp. Ex. 119) and the Oregon Supreme Court's decision denying review (Resp. Ex. 118). While this is understandably the only argument petitioner could make in defense of his clear procedural default, it is unavailing.

Since petitioner did not raise any claims on post-conviction appeal he cannot be said to have fairly presented his instant claim of ineffective assistance of counsel to Oregon's highest court as he was required to do under Oregon law. See Batchelor v. Cupp, 693 F.2d 859, 862-63 (9th Cir. 1982). Accordingly, petitioner's ineffective assistance of counsel claim is procedurally defaulted.

## II.  Merits

Under 28 U.S.C. § 2254(e)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's determination of a factual issue "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner carries the burden of rebutting this presumption of correctness by clear and convincing evidence. Id.

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003). A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams v. Taylor, 529 U.S. 362, 409.

A state court decision can be overturned for legal error only if the state court's application of Supreme Court case law was "objectively unreasonable." Penry v. Johnson, 532 U.S. 782, 793 (2001). Federal courts "may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004).

## A.    Judicial Misconduct

Petitioner claims the trial court committed judicial misconduct when it "improperly refused to receive the initial verdicts" because there was "no evidence that the jury was mistaken as to the law on that charge."

Respondent correctly points out that in his direct appeal to the Oregon Court of Appeals petitioner alleged only that the trial court's refusal to receive the verdicts violated state law, not his federal constitutional rights.  Resp. Ex. 103 at 14-17. Petitioner argued that the court erroneously applied ORS 136.480 to conclude that there had been a mistake of law.  He argued that the proper application of ORS 136.480 required each verdict to be considered on its own merits.

I concur with respondent that this claim did not present a federal constitutional question to the Oregon Court of Appeals. Thus, to the extent petitioner raises such a claim here, it is procedurally defaulted.  Further, it is not the province of this court to reexamine state court interpretations of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  State courts are the final arbiters of state law and their interpretations of state law are binding on federal courts.  Mullaney v. Wilbur, 421 U.S. 684, 691 (1975); Mendez v. Small, 298 F.3d 1154, 1158 (9th Cir. 2002).  Accordingly, petitioner is not entitled to relief based on judicial misconduct.

**B.    Double Jeopardy**

Petitioner argues his federal right to be free of double jeopardy was violated when the trial court ordered the jury to redeliberate on the intentional murder charge.  On direct appeal, petitioner asserted that "further deliberations violated defendant's rights against double jeopardy under the state and federal constitutions." Resp. Ex. 103 at 13-14.  However, he did not offer argument or case law in support of this claim.

This court looks to the last reasoned state court opinion as the basis for the state court's judgment for purposes of determining whether the state court's decision was contrary to, or resulted in an unreasonable application of Supreme Court law. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000). Since the Oregon appellate courts denied petitioner's double jeopardy claim without opinion, the last reasoned state court opinion is the trial court's.

After the trial court resubmitted the case to the jury, petitioner objected on the ground that it violated his rights under the double jeopardy clauses of the state and federal constitutions.  The trial court advised:

> The action is already taken and I don't intend to change my position based upon the argument just made.  If you do have further authority then I would appreciate it if you would make the Court and counsel aware, but for the time being the objection is noted.

Petitioner did not offer additional authority in support of his objection.

The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. AMEND. V.  Petitioner's position seems to be that the moment the jury announced its inconsistent verdicts jeopardy attached to each offense for which it rendered a verdict.  Therefore, when the jury was told to continue deliberations, petitioner was once again put in jeopardy for the same offenses.

Petitioner directs this court to three Supreme Court cases each holding that inconsistent jury verdicts are acceptable.  See Dunn v. United states, 284 U.S. 390 (1932); United States v. Powell, 469 U.S. 57 (1984); Wilson v. Czerniak, 355 F.3d 1151 (9th Cir. 2004).  In Powell, the Court offered its most expansive explanation for why inconsistent verdicts should be received. It reasoned that neither the government nor the defendant has any recourse to correct inconsistent verdicts because a jury may arrive at them through mistake, compromise or lenity, but whatever the case, it is "unclear whose ox has been gored." Id. at 65.  Yet, Powell and Dunn addressed the question whether a petitioner was entitled to a new trial based on inconsistent verdicts, and Wilson addressed whether a petitioner could bar a new trial after a jury acquitted him of an intentional murder

charge but hung on an aggravated felony murder charge.   Thus,
none of these cases constitutes clearly established federal law
on the question presented here - whether petitioner's right to be
free of double jeopardy is violated when a trial court orders a
jury to continue deliberating immediately after determining that
the jury was mistaken on the law.

     Respondent relies on two recent Supreme Court cases to argue
that double jeopardy does not attach to an acquittal until it is
final, and it is not final simply by being announced in court.
In Smith v. Massachusetts, 543 U.S. 462 (2005), the Court found
that a judge's mid-trial grant of acquittal on a firearm count
was final such that jeopardy attached because no Massachusetts
procedural rule provided that a trial court's ruling on a motion
for acquittal was nonfinal.   By contrast, in Prince v. Vincent,
538 U.S. 634 (2003), the Supreme Court found the Michigan Supreme
Court did not unreasonably apply clearly established federal law
in holding that a grant of partial acquittal was not
"sufficiently final as to terminate jeopardy" where the trial
court reconsidered its ruling before the trial proceeded[2].   The

_____

     [2] The Supreme Court also noted that numerous other courts
have refused to find double jeopardy violations under similar
situations.   See United States v. LoRusso, 695 F.2d 45, 54 (2nd
Cir. 1982)(holding double jeopardy did not bar continued
prosecution on a charge when the judge withdrew an oral grant of
a motion to dismiss a count "[w]here no judgment has been entered
... and there has been no dismissal of the jury."); United States
v. Byrne, 203 F.3d 671 (9th Cir. 2000)(finding no double jeopardy

Michigan Supreme Court had observed that no formal judgment or order had been entered on the record, which it said was one factor to consider in evaluating finality, along with whether the court made a clear statement in the record, signed an order, instructed the jury that a charge or element of the charge had been dismissed, or made a docket entry.  Id. at 642.  In an important particular, the Michigan Supreme Court also remarked that "no trial proceedings took place with respondent laboring under the mistaken impression that he was not facing the possibility of conviction for" the purportedly acquitted charge. Id. at 642-643.

Oregon law holds that a jury's verdict is final when "the jury has dispersed and is no longer under the court's control." State v. Vann, 158 Or. App. 65, 73 (1999).  As in Prince, respondent contends the initial verdict in petitioner's case was

---

violation where a trial judge orally granted a motion for acquittal, then agreed to consider an additional transcript); United States v. Baggett, 251 F.3d 1087, 1095 (6th Cir. 2001) (finding an oral grant of a Rule 29 motion outside of the jury's presence does not terminate jeopardy, inasmuch as a court is free to change its mind prior to the entry of judgment"); State v. Iovino, 524 A.2d 556, 559 (R.I.1987) (distinguishing United States v. Martin Linen Supply Co., 430 U.S. 564 (1977), on the grounds that in the case before it, "the jury remained impaneled to adjudicate lesser included charges, and that defendant was not faced with any threat of reprosecution beyond the jury already assembled to hear his case"); State v. Sperry, 149 Or. App. 690, 696( 1997)("[U]nder the circumstances presented here, the trial court could reconsider [its oral grant of a motion for a judgment of acquittal] and withdraw its ruling without violating" the Double Jeopardy Clause).

not final under Oregon law simply because it was announced in court. Here, the jury was not dismissed and did not disperse. Further, respondent argues that the statute upon which the court based its decision to resubmit the murder charges to the jury – ORS 136.480 – would be rendered meaningless if a verdict was final the moment it was announced. Finally, respondent points out that petitioner himself acknowledges that the trial court "improperly refused to *receive* the initial verdicts."

I concur with respondent that jeopardy did not attach to the jury's initial verdicts because they were not final. Not only would petitioner's interpretation render ORS 136.480 meaningless, but none of the Prince factors evidencing finality were present here. The trial judge did not enter a formal judgment or order or make a clear statement on the record accepting the inconsistent verdicts, nor did he dismiss the jury or instruct it that a charge or element of a charge had been dismissed. To the contrary, after a recess the judge addressed the jury and apologized that it had more work to do. Moreover, resubmitting the murder charges to the jury did not subject petitioner to successive prosecution – the primary harm the Double Jeopardy Clause is concerned with – nor was petitioner ever made to labor under the false impression that he was not facing the possibility of prosecution for all three murder charges. See Justices of

<u>Boston v. Municipal Court v. Lyndon</u>, 466 U.S. 294, 307 (1984);
<u>United States v. Martin Linen Supply Co.</u>, 430 U.S. 564 (1977).

Accordingly, I find the trial court's decision to order the jury to continue deliberating after announcing its initial verdicts was not contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Petitioner is therefore not entitled to habeas corpus relief based on double jeopardy.

### C.    Inconsistent Verdicts

Though he does not set out a claim for relief based on inconsistent verdicts in his ground one, petitioner states in the supporting facts section:

> If the initial verdicts had been received, the issue of inconsistent verdicts *would have been presented* to the trial court.  This court *should* treat this case *as though the inconsistent verdict issue is presented*, because the court should have received the initial verdicts.  This court *should then rule that inconsistent verdicts cannot be received* and remand this case for a new trial on the single charge of aggravated murder committed intentionally while defendant was committing the crime of Burglary in the First Degree.

In light of petitioner's preceding argument that inconsistent verdicts should not be disturbed, it is easy to see why petitioner does not cite any federal constitutional provision in support of this claim.  Yet, even if he had, petitioner would not be entitled to relief on the basis of an alleged error the trial court did not make.  Inconsistent verdicts were not

18 - OPINION AND ORDER

received by the trial court.  Accordingly, petitioner is not entitled to relief based on inconsistent verdicts.

## CONCLUSION

Based on the foregoing, petitioner's habeas corpus petition (#3) is denied.

IT IS SO ORDERED.

DATED this __1__ day of _April_, 2006.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Court Judge

19 - OPINION AND ORDER

FILED'06 APR 06 10:45USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEREMY RYAN LEHMAN,                                CV 03-1711-MA

              Petitioner,                         JUDGMENT

     v.

BRIAN BELLEQUE,

              Respondent.

     Based on the record and the Opinion and Order filed herewith, petitioner's habeas corpus petition (#13) is DENIED.

     IT IS SO ORDERED.

     DATED this ___/___ day of April, 2006.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge

1 - JUDGMENT